## ADRIAN LANGDON *vs.* JOHN HUGHES.

In an action for the price of goods sold and delivered which is charged on the plaintiff's books of account as due to himself and a third person as partners, it is competent for him to prove that he was sole owner of the goods at the time of their sale, and explain the form of the entry by oral testimony that the books were opened at a time when he was under a conditional agreement to admit the third person as a partner in his business, and that the condition was not fulfilled.

A. sold goods to B. and C. jointly. D., for a valuable consideration moving from B. and C., promised them to pay for the goods. And A., at D.'s request and with his knowledge, cancelled the charges for the price of the goods on his books, which were made in part against B. and C., and in part against C. alone, by transferring them to the account of D. *Held*, that the statute of frauds was no bar to an action by A. against D. for the price of the goods.

CONTRACT for the price of goods sold and delivered. Writ dated December 7, 1868. The items of an account annexed to the third count of the declaration, sixty-seven in number, all bore date between May 30 and October 17, 1867, and were alleged to have been " contracted by Patrick Hughes and John Hughes, Jr., sons of the defendant, who were released therefrom and said account transferred and charged to the defendant at his request by the plaintiff."

At the hearing before an auditor to whom the case was referred, it appeared, upon the production of the plaintiff's books of account, that the first fifty-eight items were charged therein to Patrick Hughes and John Hughes, Jr., the defendant's sons, and the nine other items to John Hughes, Jr., alone ; and that the account was charged to the credit, not of Adrian Langdon, the plaintiff, but of " Burton & Langdon." The defendant con-

tended that the action could not be maintained upon this account; and the plaintiff, against the defendant's objection, was allowed to prove, in explanation of it, that he and Francis Wilcox were partners in the business; "that Wilcox, about April 1, 1867, sold his interest in the firm to Sterling Burton, who was to become a partner with the plaintiff in the place of Wilcox; that Burton was disappointed in his arrangements to procure the necessary capital to pay Wilcox, and at some time near April 1, 1867, arranged, through the plaintiff, with certain persons to give their promissory notes to Wilcox for the amount of the purchase, which they did with the understanding, among all the parties, that if Burton, or some one for him, did not pay the notes in six months, he was to be considered and paid wages as a clerk from said April 1, and have nothing of profit or loss in the business; that the parties then went on with their business, and opened books, and sold goods, in the name of Burton & Langdon, and matters continued in this state until about February 1, 1868, when Burton, being unable to pay the notes, left the business, being paid as a clerk for his services; and that Burton never put in any capital."

The auditor found that all the sixty-seven items "accrued in relation to a contract in which Patrick Hughes and John Hughes, Jr., were jointly interested;" and further found "that in 1867 they had bought a quantity of wood, and were engaged in converting it into charcoal under a contract with the Millicton Iron Works; that Patrick left at some time during the season, and on October 25, 1867, John, Jr., sold out the contract or job to the defendant, who was to pay the debts, or some part of them, of Patrick and John, Jr.; and that, some time in the winter following, the defendant went to the plaintiff's shop, and told Burton and the plaintiff that he had bought out his boys in the job, and was to pay their debts, and would pay this debt," referring to the account of sixty-seven items, "and directed it to be transferred to him, and it was so transferred and charged to the defendant." The defendant contended that all this "only proved an agreement which was within the statute of frauds, and not binding on the defendant."

VOL. XI. 18

At the trial in the superior court, before *Devens*, J., the auditor's report was put in evidence, and was not contradicted, " except so much of it as was involved in the following inquiries, which were submitted to the jury upon evidence offered by both parties, and were answered in the affirmative : Did the defendant agree with his sons to pay the debt due from them to the plaintiff ? Was the account of the sons transferred to the defendant, with his knowledge and at his request ? Was the account of the sons credited on the books of the plaintiff, with the knowledge of the defendant and at his request ? "

The case was reported for the determination of this court, under an agreement of the parties that judgment should be entered for the plaintiff for a certain sum, if the court should be of opinion that on the facts reported by the auditor the plaintiff was entitled to recover upon the account annexed to his third count, and otherwise the plaintiff should have judgment for a less sum.

*J. Dewey, Jr.,* for the plaintiff.

*B. Palmer,* for the defendant.

AMES, J. It has often been decided that charges in a book of accounts are not written contracts, but the private memoranda of the party, and as such open to explanation. *James* v. *Spaulding,* 4 Gray, 451. *Banfield* v. *Whipple,* 10 Allen, 27. The plaintiff therefore had a right to account for the fact that the books appeared to be kept in the name of himself and another person, by showing that an intended partnership with that person had never gone into effect, and that he was himself the sole owner of the goods charged in the account. Burton had never fulfilled the condition on which he was to become a partner with the plaintiff, and according to the terms of their agreement was merely the plaintiff's clerk. The action is therefore rightly prosecuted in the name of Langdon alone.

The defendant, for a valuable and sufficient consideration, had assumed upon himself, by his contract with his sons, the payment of their debt to the plaintiff. The case finds that the plaintiff with the knowledge and at the request of the defendant, cancelled the charge against them by transferring the entire account to the defendant's account. By substituting himself in their place in

this manner, the whole became the defendant's own debt, and it is wholly immaterial that a portion of the items were charged originally to one only of his sons. The case therefore comes within the rule laid down in *Alger* v. *Scoville*, 1 Gray, 391 ; *Wood* v. *Corcoran*, 1 Allen, 405 ; *Walker* v. *Penniman*, 8 Gray, 233 ; *Furbish* v. *Goodnow*, 98 Mass. 296 ; *Browning* v. *Stallard*, 5 Taunt. 450. *Judgment for the larger sum.*